IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLIOT K. ANDERSON,<br>    Petitioner | :<br>:  CIVIL NO. 1:12-CV-0155<br>: |
| v. | :  Hon. John E. Jones III<br>: |
| WARDEN BLEDSOE,<br>    Respondent | :<br>:<br>: |

## **MEMORANDUM**

April 24, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

On January 26, 2012, Petitioner Elliot Anderson ("Petitioner" or "Anderson"), a federal inmate presently confined at the United States Penitentiary Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above action *pro se* by filing a Petition for Writ of Habeas Corpus ("Petition") under the provisions of 28 U.S.C. § 2241.  He alleges that his right to due process was violated during the course of disciplinary proceedings that occurred while he was in the custody of the Federal Bureau of Prisons ("BOP").  On the same date, Anderson filed two other § 2241 habeas petitions raising similar claims with respect to disciplinary proceedings arising out of other incidents that occurred while he was in BOP custody.  Those petitions were docketed at Civil Nos. 1:12-CV-0156 and 1:12-CV-0157.  Anderson paid the required $5.00 filing fee in each of the three cases.

By Order dated January 31, 2012 entered in each of the three cases, Respondent was directed to show cause on or before February 21, 2012 why Petitioner should not be granted habeas corpus relief.  (Doc. 4.)  On February 21, 2012, Respondent filed a Motion for a More Definite Statement and for a Stay of the Court's Show Cause Order pending further order of court in each of the three cases.  (Doc. 7.)  Specifically, Respondent observed that Anderson did not provide incident report numbers for the incidents he referred to in each of his petitions, and the dates he listed as having had DHO hearings did not correspond with his discipline record, and thus it was necessary for Petitioner to amend his petition to include this information in order to enable Respondent to formulate a response to each of the petitions.  (*See* Doc. 8.)  By Memorandum and Order dated February 27, 2012, Respondent's Motion was granted, and Anderson was directed to file an amended petition in each of the three cases on or before March 19, 2012.  (Doc. 9.)

On March 5, 2012, Anderson filed an identical document in each of his three cases entitled "Petitioner's Amended Statement with Attachments."  (*See* Civil No. 1:12-CV-0155, 0156, 0157, Doc. 10.)  Upon review of his Amended Petition, it was apparent to the Court that Anderson makes claims with respect to disciplinary proceedings stemming from three (3) separate incident reports, and thus we determined that he had properly filed three (3) separate actions and that each case

2

should remain open and be litigated separately.  In our Order dated March 6, 2012 directing Respondent to file an answer to the Amended Petition in each of the three (3) cases, we organized Anderson's claims as follows:

> **Petition A: Civil No. 1:12-CV-0155**- Claims relating to Incident Report #2183350 (*see* Doc. 10 at 2-3);
>
> **Petition B: Civil No. 1:12-CV-0156**- Claims relating to Incident Report #2182608 (*see id.* at 4-5);
>
> **Petition C: Civil No. 1:12-CV-0157**- Claims relating to Incident Report #2148387 (*see id.* at 5-7).

(*See* Doc. 11 at 2.)

On March 27, 2012, Respondent filed a Response to the Petition in the instant action relating to Incident Report #2183350.  (Doc. 12.)  Although our March 6 Order provided that Anderson could file a reply brief within fourteen (14) days from the date of Respondent's filing, but no later than April 10, 2012, no reply brief has been filed.  Accordingly, the Amended Petition is ripe for disposition.  For the reasons set forth below, the Amended Petition will be denied.

## I.     FACTUAL BACKGROUND

### A.     Sentencing Information

Anderson is serving a 210 month term of imprisonment imposed on February 13, 2003 by the United States District Court for the Middle District of Florida for

firearm related charges.  (Doc. 12-1 at 1, Romano Decl., ¶ 2.)[1]  As of Mach 7, 2012, Anderson's projected release date was October 12, 2018, via good conduct time release.  (*Id.*)

### B. Facts Relating to Incident Report #2183350

On July 7, 2011, during Anderson's confinement at USP Lewisburg, while an officer was conducting a two hour restraint check on Anderson, Anderson stated, "If you let me out of these chains, I am going to kill myself and a staff member . . . And tell that fucking warden I have something for him too."  (Doc. 12-1 at 7, 7/7/11 Incident Report.)  As the officer was leaving the cell, Anderson attempted to spit on him and yelled, "Get the fuck out of here."  (*Id.*)  Anderson was issued Incident Report #2183350 that same day charging him with Assaulting Any Person, in violation of Code 224, and Threatening Another Person with Bodily Harm or any Other Offense, in violation of Code 203.  (*Id.*)

On July 12, 2011, Anderson was provided with a Notice of Discipline Hearing before the DHO and Inmate Rights at Discipline Hearing Form.  (*Id.* at 9.)  The Unit Discipline Committee ("UDC") referred the charge to the DHO for further hearing.  (*Id.* at 7.)

---

[1] Throughout this Memorandum, all citations to page numbers of documents filed to the docket in this action are to the page numbers generated by the CM/ECF System.

On July 18, 2011, Anderson was provided with a hearing in front of the DHO. (*Id.* at 10, DHO Report, § I. B.) Anderson was advised of his rights by Counselor T. Newcomb on July 12, 2011, as reflected by the Inmate Rights at Discipline Hearing Form attached to the DHO Report (*id.* at 14), and as noted in the DHO Report (*id.* at 10 § I. C). As reflected by the DHO Report, Anderson chose not to appear before the DHO. (*Id.* at 11 § III. C.) It was noted at the hearing that, as indicated on the Notice of Discipline Hearing before the DHO (*id.* at 9), Anderson elected staff representation and did not elect witness testimony. (*Id.*) The DHO Report reflects that Counselor F. Gambone appeared on Anderson's behalf and that Gambone noted no discrepancies in the discipline process and was disclosed all documentation in reference to the case. (*Id.* at 10 § II. B, E.) Gambone also stated that he met with Anderson in advance of the hearing and stated for the record, "He asked me to look at video. It was inconclusive. I couldn't tell what was going on. I spoke to Dr. Johanson and she said she wasn't present during the incident." (*Id.* § II. E.) The DHO Report also reflects that no procedural issues were cited, no documentary evidence was provided for consideration, and as Anderson elected prior to the hearing not to have witnesses (*id.* at 9), no witnesses were called. (*Id.* at 11 § III. B, C.)

The DHO determined that Anderson committed the prohibited acts of Assaulting Any Person, in violation of Code 224, and Threatening Another Person

with Bodily Harm or any Other Offense, in violation of Code 203.  (*Id.* § IV.)  The DHO provided an explanation of the specific evidence relied on in support of this determination, which included the eyewitness account of the reporting staff member, as reflected in the incident report, as well as the fact that Anderson failed to present any statement or evidence which would exculpate him of the charge.  (*Id.* at 12 § V.)

The DHO sanctioned Anderson for the Code 203 violation with the disallowance of twenty-one (21) days of good conduct time; the forfeiture of sixty (60) days non-vested good conduct time; thirty (30) days of disciplinary segregation; the loss of telephone privileges for two (2) years; the loss of TRULINCS privileges for two (2) years; the loss of visiting privileges for two (2) years; the loss of commissary privileges for two (2) years; and the impounding of personal property, excluding religious and legal materials, for ninety (90) days.  (*Id.* § VI.)

The DHO sanctioned Anderson for the Code 224 violation with the disallowance of thirty (30) days of good conduct time; the forfeiture of 361 days of non-vested good conduct time; thirty (30) days of disciplinary segregation; the loss of telephone privileges for two (2) years; the loss of TRULINCS privileges for two (2) years; the loss of visiting privileges for two (2) years; and the loss of commissary privileges for two (2) years.  (*Id.*)

6

## II.     DISCUSSION

The Fourteenth Amendment of the United States Constitution provides in pertinent part as follows: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  Federal inmates possess a liberty interest in good conduct time.  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).  Accordingly, "[h]abeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time."  *Robinson v. Warden*, 250 Fed. Appx. 462, 464 (3d Cir. 2007).

In *Wolff*, where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker. 418 U.S. at 563-73.

In particular, the Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Id.* at 556.  Nonetheless, the Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed.  *Id.* at 563-71.  The Court set forth the following five

requirements of due process in a prison disciplinary proceeding: **(1)** the right to appear before an impartial decision-making body; **(2)** twenty-four hour advance written notice of the charges; **(3)** an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; **(4)** assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and **(5)** a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  *Id.*

Where the due process requirements of *Wolff* are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision to revoke good time credits.  *Superintendent v. Hill,* 472 U.S. 445, 455 (1985); *see also Young,* 926 F.2d at 1402-03 (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings).  The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Under *Hill,* judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the

8

ultimate decision has some evidentiary support. *Id.* at 457; *see also* 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence.").[2]

In the instant case, it is apparent upon review of the record that Anderson was afforded each of the due process protections set forth in *Wolff* in connection with the disciplinary proceedings that form the basis for this action. Specifically, as set forth in the foregoing section, Anderson received the opportunity to appear before a DHO, but chose not to appear at the July 18, 2011 hearing; he was provided with written notice of the charges against him in the incident report and notice of his DHO hearing, delivered on July 8 and July 12 respectively, which was more than twenty-four (24) hours before his disciplinary hearing occurred on July 18; he was afforded the opportunity to call witnesses and to present documentary evidence, and elected not to do so; Anderson was given the opportunity to have the assistance of a staff representative of his own choosing and elected to have Counselor Gambone serve in that capacity; and he was provided with a thorough written explanation of the DHO's decision, as well as the rationale for the decision.

It also is apparent that the DHO's decision was supported by "some evidence" and

---

[2] We note that the language contained in 28 C.F.R. § 541.8(f), which is part of the revision of the BOP's Inmate Discipline Program Regulations that became effective June 20, 2011, and thus was effective at the time of the DHO hearing at issue in this case, formerly was contained in 28 C.F.R. § 541.17(f).

that the DHO properly documented his findings and specific evidence relied on in reaching those findings as required by 28 C.F.R. § 541.8(h) (formerly 28 C.F.R. § 541.17(g)). In particular, the DHO relied upon the eyewitness account of the reporting staff member, as reflected in the incident report, as well as the fact that Anderson failed to present any statement or evidence which would exculpate him of the charge. (*See* Doc. 12-1 at 12 § V.)

In his Amended Petition, Anderson alleges that the sanctions that were imposed were "grossly disproportionate to the offense" (*see* Doc. 10 at 2); that the DHO "refused to consider audio and video surveillance that would overwhelmingly show that the accusations of threatening and assault never occurred" (*see id.*); and that the DHO failed to consider that Counselor Gambone, Anderson's staff representative, had a conflict of interest inasmuch as Anderson wrote complaints of staff misconduct against him prior to the July 18 hearing (*see id.* at 3).

With respect to the sanctions that were imposed (the loss of vested and non-vested good conduct time, disciplinary segregation, the impoundment of personal property, and the loss of various privileges), all of these sanctions were in line with BOP policy regarding sanctions available for 200-level offenses. *See* 28 C.F.R. § 541.3(b), Table 1 (formerly 28 C.F.R. § 541.13, Tables 3 and 4).

Anderson's remaining grounds are refuted by the record. He contends that the

DHO refused to consider audio and video surveillance, but the DHO Report reflects that Anderson chose not to appear at hearing and that he therefore failed to present any statement or evidence which would exculpate him of the charges. (*See* Doc. 12-1 at 11-12.) In addition, Anderson's staff representative, Counselor Gambone, stated that, while Anderson asked him to look at video, it was inconclusive, and he could not tell what was going on. (*See id.* at 10.)

Finally, with respect to Anderson's contention that the DHO should have found that Counselor Gambone had a conflict of interest that would prevent him from representing Anderson at hearing, the record reflects that Anderson elected to have Gambone represent him on July 12, 2011 when he was provided with notice of the DHO hearing. (*See* Doc. 12-1 at 9, Notice of DHO Hearing.)  To the extent that a conflict of interest arose between the time that Anderson elected to have Gambone represent him and the date of the hearing, where Anderson chose not to appear at the hearing, he failed to bring that conflict to the DHO's attention.  Accordingly, he cannot claim that the DHO violated his right to due process by failing to recognize a conflict of interest.

### III.   CONCLUSION

Because Anderson was afforded all of the due process protections required by *Wolff* and there was "some evidence" to support the DHO's findings, he is not entitled to habeas relief, and the Amended Petition will be denied.  An appropriate Order will

enter on today's date.